**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

H. EUGENE LYMAN and ARLENE
W. LYMAN, individually, and as
trustees of both the G.A.L. Trust and
Equity Associates,

    Defendants - Appellants,

and

FRANK WILLIAM LEONESIO,

    Intervenor.

No. 98-4109

(D.C. No. 98-CV-140-S)

(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **McKAY**, and **LUCERO**, Circuit Judges.

After examining the briefs and the appellate record, this panel has

determined unanimously that oral argument would not materially assist the

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

determination of this appeal. <u>See</u> Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Appellants H. Eugene Lyman and Arlene W. Lyman, proceeding pro se, appeal an order of the United States District Court for the District of Utah denying their motion to reconsider, set aside, and vacate the district court's default judgment entered against them on April 23, 1997. Additionally, Intervenor Frank William Leonesio, also proceeding pro se, filed a Motion to Set Aside Default Judgment for Misjoinder. He appeals the district court's joining him as an intervenor/defendant and asks this court to set aside the default judgment for want of jurisdiction and misjoinder.

On February 13, 1996, the United States filed a complaint against the Lymans seeking three results: (1) to reduce to judgment federal income tax assessments for the years 1981 and 1983 through 1989; (2) to set aside the fraudulent transfer of two parcels of real property known as the Ashby and Cannon properties, or to determine that the Lymans held title to those two parcels of real property as trustees of two trusts, Equity Associates and G.A.L. Trust; and (3) to foreclose federal tax liens against that real property. <u>See</u> R., Vol. I, Doc. 1. The action was brought at the request and with the authorization of the Internal Revenue Service pursuant to 26 U.S.C. §§ 7401 and 7403 and was based on assessments against each of the Lymans for $606,785.10 which had been

-2-

outstanding since July 19, 1993. The Lymans responded by filing a Motion to Quash in the form of a Non-Statutory Abatement and Clarification of Record, a memorandum in support of that motion, and a second Non-Statutory Abatement in which they claimed that they were "state Citizens of the Republic of Utah" and had never been citizens of the United States, which rendered the assessments "null and void nunc pro tunc." Id., Doc. 8 at 2; Docs. 12, 18. They also made other arguments including declarations that the district court lacked jurisdiction to hear the case and that the federal government was engaging in collusion and conspiracy and had committed fraud and many other violations of the state and federal constitutions and the Utah Penal Code.

On June 3, 1996, the court granted the government's first motion to strike the Lymans' motion to quash, holding that the Lymans' arguments were "frivolous and without legal merit." Id., Doc. 15. After a hearing on November 25, 1996, at which the Lymans did not appear, the district court granted the government's second motion to strike the Lymans' motions and it ordered the Lymans to file a proper answer, or a default judgment would be entered against them. See id., Doc. 32. The Lymans did not file an answer or any other response, but the government subsequently filed a Motion for Entry of Default Judgment. On January 23, 1997, instead of issuing a default judgment, the district court issued an order to the Lymans to personally appear before the court and to show

-3-

cause why a default judgment should not be entered against them.  See id., Doc. 36.  Following the second hearing on February 7, 1997, at which the Lymans also did not appear but the court heard evidence from the government, the court entered a default judgment on April 23, 1997, against the Lymans personally and in their capacities as trustees of Equity Associates and the G.A.L. Trust.  See id., Doc. 39.  The court then found that the Lymans held title to the two real properties at issue, and it set aside the two transfers complained of as fraudulent transfers and ordered the sale of the properties and the distribution of the proceeds in accordance with the priority of the liens and claims of all parties.  See id., Docs. 40, 41.

In response to these orders, Mr. Leonesio filed a Notice of Amicus Curiae in which he claimed that, as trustee for Thunderbird Management, he was the owner of the Ashby and Cannon parcels of real property at issue, and he asserted a claim to that property.  In an Order dated June 13, 1997, the district court treated Mr. Leonesio's Notice of Amicus Curiae as a motion to intervene and joined him as an intervenor/defendant in the action, even though Mr. Leonesio may not have intended to become a party.  See id., Doc. 46 at 4.  The court then determined that Mr. Leonesio's individual claim was inferior to the government's tax liens and that the property would sell free and clear of his claims upon foreclosure, but that any surplus proceeds would be paid to the court registry to

determine Mr. Leonesio's interest pending further order of the court. While the government proceeded with the foreclosure and sale of the properties, the Lymans filed two bankruptcy petitions, both of which were later dismissed.

Eight months after the entry of the default judgment against them, the Lymans filed a Motion to Reconsider, Set Aside and Vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b), a Motion to Rescind and Vacate Eviction Order, a Motion to Set Aside Order Compelling Discovery, and a Motion for Imposition of Sanctions. The government filed a Motion to Amend Order of Sale. The Lymans alleged "Inadvertence; Excusable Neglect; Newly Discovered Evidence; and Fraud on the part of the Plaintiff" as grounds for their Rule 60(b) motion. Id., Vol. II, Doc. 69 at 2. On June 18, 1998, the district court denied all of the Lymans' motions. Specifically, the court found that their "unsupported allegation of fraud on the part of the United States [was] not sufficient to set aside the default judgment." Id., Vol. III, Doc. 81 at 4. It also determined that, because the motion to reconsider was brought eight months after entry of the default judgment and no explanation was offered for the delay, it was not brought within a "reasonable time" under Rule 60(b). Id. In response to the motion to rescind the eviction order, which the court denied, the court ordered the Lymans to refrain from any action that would frustrate or hinder the sale of the property at issue. The court also denied the Lymans' motion for sanctions, which

-5-

was based on the alleged violation of a bankruptcy stay.[1]  The court stated that it did not believe that the government attorney or the United States Marshal had willfully violated the bankruptcy stay, but that the bankruptcy court is the proper forum for such a motion in any event.  The court granted the government's motion to amend the order of sale, but it ordered the Lymans to submit a survey by a registered land surveyor setting forth new legal descriptions of the property and delineating any errors in the government's survey.

To the extent that Mr. Leonesio appeals the district court's orders joining him as intervenor/defendant and entering a default judgment, both of which were filed in 1997, we reject these appeals as untimely.  See Fed. R. App. P. 4(a)(1)(B) (requiring filing notice of appeal "within 60 days after judgment or order appealed from is entered").  To the extent that Mr. Leonesio appeals the denial of the Lymans' Rule 60(b) motion,[2] we address his arguments in conjunction with the Lymans' arguments.  Therefore, we refer to H. Eugene Lyman, Arlene W. Lyman, and Frank William Leonesio collectively as "Appellants."

On appeal, Appellants advance arguments similar to those presented to the district court.  These arguments reflect hackneyed tax protester refrains that the

---

[1]The record indicates that the bankruptcy petition to which this stay related was dismissed by the bankruptcy court for bad faith.

[2]On July 21, 1998, Mr. Leonesio filed a Motion of Intervention in this appeal which was granted by the Clerk of the Court on July 27, 1998.

federal government has no jurisdiction over Appellants, the government's complaint is fraudulent, and the government has committed collusion and fraud against Appellants. See United States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990), cert. denied, 500 U.S. 920 (1991). Appellants also claim that the district court erred in dismissing the Rule 60(b) motion based on untimeliness. They argue that the grounds alleged for the Rule 60(b) motion, "Inadvertence; Excusable Neglect; Newly Discovered Evidence; and Fraud on the part of the Plaintiff," R., Vol. II, Doc. 69 at 2, are all reasons listed under subsections (1), (2), or (3) of Rule 60(b), which mandates that they have one year in which to file such a motion.

We review the district court's denial of Appellants' Rule 60(b) motion for abuse of discretion. See Stubblefield v. Windsor Capital Group, 74 F.3d 990, 994 (10th Cir. 1996). We do not examine the underlying judgment because the scope of our review is limited to the order on the Rule 60(b) motion. See id. Upon our review of the briefs, the district court's many orders, and the entire record on appeal, we affirm the district court's decision for all the reasons stated in its Order filed June 18, 1998, and for several reasons that we think should be explicitly stated.

First, we add that Appellants' interpretations of the statutes which confer jurisdiction in actions relating to internal revenue laws are patently incorrect.

There is no doubt in our minds when we declare that 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340 and 1345 explicitly vest federal district courts with jurisdiction over civil actions involving the enforcement of internal revenue laws and over any civil action commenced by the United States as plaintiff. Efforts by Appellants to challenge the authority of the federal courts to preside over actions such as that filed by the United States in this case defy credulity. See Collins, 920 F.2d at 629.

While we hesitate to give Appellants' arguments any further attention, we think it important to reaffirm that the federal courts have jurisdiction over Appellants. "All citizens of the United States are liable for income taxes and every person born in the United States is a citizen of the United States." Cox v. Commissioner of Internal Revenue, 99 F.3d 1149 (10th Cir. 1996) (Table); see also 26 C.F.R. § 1.1-1(b) & (c); Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990) (rejecting argument that individual who is a citizen of a state is not a "person" subject to taxation under Internal Revenue Code as "completely lacking in legal merit and patently frivolous"); United States v. Dawes, 874 F.2d 746, 750-51 (10th Cir.) (characterizing statement that defendants are not taxpayers because they are citizens of Kansas as frivolous), cert. denied, 493 U.S. 920 (1989), overruled on other grounds, United States v. Allen, 895 F.2d 1577, 1580 (10th Cir. 1990). Since 1916, the Supreme Court has recognized that "the

Sixteenth Amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves." See Cox, 99 F.3d 1149 (citing Brushaber v. Union Pac. R.R. Co., 240 U.S. 1, 12-19 (1916)).

Additionally, Appellants' argument that the default judgment was inappropriate because they were inexperienced in matters of litigation and had difficulty obtaining counsel is without merit. While we construe pleadings of pro se litigants liberally, see Haines v. Kerner, 404 U.S. 519, 520 (1972); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996), "an appellant's pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994), cert. denied, 513 U.S. 1090 (1995). Further, it is evident from the record that Appellants disregarded clear statements from the district court not only ordering them to appear at hearings and to come forth with valid arguments which would support a defense but also stating that their arguments on jurisdiction and the government's alleged fraud were "frivolous and without legal merit." R., Vol. I, Doc. 15 at 1; see also id., Docs. 32, 36. We will not entertain this argument in light of such obvious abuses.

Finally, we think it worthwhile to address the question of the timing of the Rule 60(b) motion. In addition to the court's determination that the merits of Appellants' arguments did not warrant setting aside the default judgment, it also

found that the motion to reconsider was not brought within a reasonable time because Appellants had not offered any valid explanation for why they waited eight months after the entry of judgment before filing the motion. See id., Vol. III, Doc. 81 at 4-5. Rule 60(b) states that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment . . . was entered." Fed. R. Civ. P. 60(b). The government is correct in its assessment that the one-year time frame is an outer limit which is secondary to the requirement that the motion be made within a reasonable time. Contrary to Appellants' assertion, a Rule 60(b) "motion is not timely merely because it has been filed within one year of the judgment." White v. American Airlines, Inc., 915 F.2d 1414, 1425 (10th Cir. 1990). Whether a Rule 60(b) motion is made within a reasonable time "depends on the facts of each case," Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981), taking into consideration several factors including the reason for the delay and the prejudice to the other parties. See id.; see, e.g., Security Mut. Cas. Co. v. Century Cas. Co., 621 F.2d 1062, 1067-68 (10th Cir. 1980) (upholding denial of a Rule 60(b) motion on the ground that it was untimely because of unexplained 115-day delay between date of judgment and date motion filed); accord Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610-11 (7th Cir. 1986) (holding that delay of four months after plaintiff learned of dismissal was unreasonable under the circumstances); Central Operating Co. v.

Utility Workers of Am., AFL-CIO, 491 F.2d 245, 253 (4th Cir. 1974) (finding no abuse of discretion in denying relief from judgment when defendants waited almost four months after receiving notice of default judgments before filing motions to vacate and provided no satisfactory explanation for delay).

In light of our conclusion above concerning Appellants' pro se status, Appellants' claim that they were inexperienced in matters of litigation and had difficulty obtaining counsel does not provide a valid reason for the delay. Further, based on our review of Appellants' lengthy and convoluted filings in this case, we think it significant that the district court went beyond its duty by giving Appellants every opportunity to respond to the government's filings. Therefore, because Appellants have not offered sufficient justification for the eight-month delay, we conclude that the court did not abuse its discretion in determining that the Rule 60(b) motion was untimely.

For the foregoing reasons, we affirm the district court in all respects.[3]

---

[3]We do not address the substance of any of the other motions filed by Appellants and denied by the district court in its Order filed June 18, 1998, because Appellants do not raise such issues in their briefs.

**AFFIRMED**.

Entered for the Court


Monroe G. McKay
Circuit Judge